And we'll move to the next argument, it's Nicholas Wade v. Daniels and Jones and Wilson. William Alexander Smith is here for Wade, and Nakeisha McDonald is here for the athletes. And Mr. Smith, are you ready to proceed with your argument? I am, Your Honor. Thank you and good morning, Your Honors. Alex Smith for the appellant, Nicholas Wade. This is an appeal from the district court's erroneous grant of summary judgment to appellees on qualified immunity grounds, thereby dismissing Mr. Wade's triable claims for excessive force and deprivation of medical care. In granting summary judgment to appellees, the district court failed to take the facts in the light most favorable to Mr. Wade and failed to draw all reasonable inferences in favor of Mr. Wade, which demonstrate that a reasonable jury could conclude that appellee's conduct violated Mr. Wade's constitutional rights. Now, I'd like to focus today on two of the district court's most clear errors, and that relates first to Mr. Wade's claim against Investigator Jones for the use of excessive force and pistol whipping Mr. Wade in the head, and Mr. Wade's claim against Investigator Daniels for the wrongful use of deadly force in shooting Mr. Wade. Mr. Wade set forth facts sufficient to obtain a trial on whether Investigator Jones' pistol whip violated Mr. Wade's clearly established rights. This court's clearly established law holds that an officer cannot use significant force against a suspect who is not resisting arrest nor posing a threat to others. A jury could conclude that no reasonable officer would have believed that Investigator Jones could have used grievous extreme force and pistol whipping Mr. Wade in the head. That's because it was undisputed at summary judgment that Mr. Wade was handcuffed, disarmed, and that he'd been shot three times, including once to the head, when Investigator Jones pistol whipped Mr. Wade. The facts taken in the light most favorable to Mr. Wade show that a reasonable officer in Investigator Jones' position would have known that Mr. Wade posed no threat to the officers and that he was not resisting arrest, warranting the use of grievous force. Now, in grand jury cases, didn't the court rely on the fact that he stood up and used his hands to free himself and the fact that the car had not been cleared of all of the weapons? And another factor that we take into consideration is the severity of the crime. He was wanted for the murder of the child of the lady who was in the car with him, and the car had not been cleared of all weapons. Well, Your Honor, Judge Wilson, of course, what's critical to this court's excessive force inquiry is what a reasonable officer in Investigator Jones' position would have known when he used grievous force against Mr. Wade. In drawing all reasonable inferences in favor of Mr. Wade is, of course, the district court and this court is constrained to do at summary judgment shows that Investigator Jones was close enough to hear Mr. Wade's pleas with Investigator Beach that her restraint on his head was causing him to suffocate on his own blood, and thus that Investigator Jones would have known that Mr. Wade was not posing a threat by simply sitting up so that he wouldn't suffocate on his own blood. He was doing so for a benign purpose and not as a threat to the officers. Excuse me, Mr. Smith, this is Jill Pryor. What is the evidence that Officer Jones was close enough to hear what Mr. Wade said when he said that he couldn't breathe? Yes, Judge Pryor. So Investigator Jones stated in his declaration submitted in support of his motion for summary judgment that he saw after Mr. Wade was shot by Investigator Daniels that he saw Investigator Beach remove the shotgun from the vehicle and handcuff Mr. Wade. So therefore, we know that he was at least within the vicinity of the vehicle. And then Mr. Wade in his declaration submitted in opposition to Apelli's motion for summary judgment stated that Investigator Beach began to purportedly render medical aid and that he was pleading with Investigator Beach to remove her hands from his head so that he wouldn't suffocate on his own blood. He stated that when he sat up so that he wouldn't choke on his own blood that Investigator Jones then immediately hit Mr. Wade in the head with a pistol. So therefore, it's certainly a reasonable inference that this court should draw that Investigator Jones was within the immediate vicinity of the vehicle when Mr. Wade was playing with Investigator Beach. And of course, it doesn't have to be the most probable inference for this court to draw a reasonable inference. It simply has to be a reasonable inference. And materially similar case law, as well as this court's clearly established principle that I've discussed previously, barring the use of significant force against a suspect who's not resisting arrest nor threatening others shows that Investigator Jones violated Mr. Wade's clearly established rights when he hit Mr. Wade in the head with a pistol. This court's line of cases set forth in our brief and the Hadley, Lee, and Slicker cases provided Investigator Jones with fair notice that significant force was unlawful in this circumstance as against a suspect, Mr. Wade, who was handcuffed and who was not posing a threat or resisting arrest when the facts are taken in the light most favorable. Isn't that a question of fact at this point? Because there's a dispute as to whether or not Mr. Wade was resisting or whether or not he was, in fact, not threatening because he was shot. But there's testimony that he did move his hands or try to move Beech's hands from him. Well, again, Your Honor, drawing all reasonable inferences in favor of Mr. Wade, a reasonable officer in Investigator Jones's position would have known that Mr. Wade was sitting on him simply for a benign purpose. And I think it's critical that we take into consideration the totality of the circumstances at the moment that Investigator Jones used grievous force and whipping Mr. Wade in the head. The undisputed evidence at summary judgment demonstrates that Mr. Wade was handcuffed at the time that Investigator Jones used significant force against him and that he had been shot three times, including once to the back of the head. Now, no reasonable officer would have perceived Mr. Wade's actions and simply sitting up as posing a true threat to the officers that would have warranted the use of grievous force. Indeed, what this court has held in the Mercado case and in the Baltimore case that we cite in our brief to this court can constitute deadly force, the blunt force trauma to the head. No reasonable officer in Investigator Jones's position would have believed that the possible need for force and potentially requiring some sort of minor restraint as against Mr. Wade would have justified the need for grievous force. This is Jill Pryor. Didn't Mr. Wade also state under oath that Officer Daniel said, he'll be dead in a minute, I shot him in the head? That's correct, Judge Pryor, he did. And that goes to our claim of deprivation of medical care, which I'm certainly happy to get into as well, of the fact that the officers reportedly stood around for several minutes without calling for EMS after Investigator Daniels had shot Mr. Wade. But I'd simply like to drive home the fact relating to Mr. Wade's allegation that the four minute delay before they called an ambulance was intentional. Why isn't that a factor that was properly taken into consideration by the District Court? Well, Your Honor, this court's case law in Boozman and Valderrama that we rely on in our brief sets forth this court's clearly established law that a jury can infer that an officer acted with deliberate indifference in delaying providing access to medical care when the officer ignores without explanation a suspect's medical need. And that's exactly what we have here. But how do you have in the record any evidence that he was being ignored? I mean, the moment the shot happened, they asked one of the other officers to call for an ambulance. Um, each goes in, uh, gets the gun, secures the gun, and then proceeds to, uh, render aid. So I guess I understand under, under the cases that you're talking about, there was a situation there where they told the guy, he's like, please call an ambulance. And they told him to sit down. And then they waited for minutes while they were talking. What evidence do you have that, uh, that they were being indifferent or that they were intentionally delaying, uh, medical treatment? Well, this court's clearly established law holds that a jury can infer deliberate indifference when the officers provide no explanation or no justification for your delay. And I want to- The evidence says that you can infer that, but there has to be some evidence. So what evidence is there? I, in those cases, there clearly was evidence that there could be an inference from, but here, what is the inference that could be drawn? Well, Your Honor, the inference that could be drawn is that the officers did, uh, delayed, uh, requesting medical aid for four minutes. Uh, the, the district court relied on Investigator Wilson's statement and his declaration submitted in support of his motion for summary judgment and finding that Investigator Wilson purportedly immediately asked another investigator to request an ambulance. And I'm reading from document 50-4 at page 7, in which Investigator Wilson simply states that, I instructed Investigator Wardham to request an ambulance. Investigator Wilson sets forth no evidence whether he did so within five seconds or he did so in four minutes. And so, based on the, the, the record that we have before us, uh, drawing all facts in favor of Mr. Wade demonstrates that, uh, the investigators waited four minutes before requesting, uh, an ambulance. And of course, a delay can be, and a delay in seeking medical assistance for a serious medical need can be actionable under this court's case law, uh, based on the nature of the injury inflicted, which here we unquestionably have a life-threatening injury and a gunshot wound to back of the head, as well as the justification for the delay. And that's what we're missing here, is the justification for the delay. The officers have set forth no, uh, reasonable non-medical justification for why it took 11 officers four minutes to request, uh, uh, medical assistance, uh, for Mr. Wade. And even though... Ms. Smith, this is Jill Pryor. I didn't mean to sidetrack you, track you, and I want to make sure that you get to your shooting claim, um, before your time is up. Oh, yes. With regard to that claim, I'm struggling to understand why a reasonable officer wouldn't have perceived Mr. Wade as a threat to Ms. Belk, who was in the car, because the officers knew that Wade was accused of murdering the child. During the car ride, the officers overheard a discussion where Mr. Wade said to Belk, you brought the folks, meaning the police, to me, and she said, I'm so scared. They were side-by-side in the car, and Wade was pointing a gun at himself while facing her. So, couldn't a reasonable officer have perceived him as a threat to Ms. Belk? Well, Judge Pryor, the salient inquiry in this court's deadly force analysis... You can continue your argument, counsel. Thank you, Judge Wilson. The critical inquiry in this court's deadly force analysis is whether the surrounding circumstances would indicate to a reasonable officer in Investigator Daniel's position that Mr. Wade intended to inflict immediate harm to others. Now, there's no evidence in the record that Mr. Wade had defied any warnings of the officers or that he was acting in any erratic or unexpected manner. Whether a reasonable officer would have simply perceived Mr. Wade's actions in pointing a gun solely to himself is demonstrating that he was suicidal and that he intended to inflict harm to himself rather than others. And, of course, this court has held in the Perez v. Shusinski case that we cite in our brief that merely the fact that an armed individual holds a deadly weapon does not warrant the use of deadly force. It's what the suspect is doing with that deadly weapon. And here, the facts taking the light most favorable to Mr. Wade demonstrate that Mr. Wade was pointing the deadly weapon solely at himself and not acting in an erratic manner. And, Your Honor, I believe at this time I'll reserve the rest of my time for rebuttal. All right. Thank you, Mr. Smith. We will hear from Ms. McDonald on behalf of the athletes. Yes. Good morning, Your Honors. May it please the court, Nakeisha McDonald here on behalf of the athletes respectfully requesting that you will affirm the decision of the District Court. I want to jump into a point that was made by one of the judges and that is that, yes, reasonable inferences can be incurred in favor of the plaintiff, but, of course, those inferences must be supported by the record. And, of course, the overarching theme here because we are talking about use of force and use of deadly force is objective reasonableness as discussed in the Graham case. And in looking at the qualified immunity analysis, what we are limited to are the facts that were known to the defendants at the time that they were engaging in conduct. And in the context of law enforcement cases, one thing that courts have always said over and over again is we do not want to look at this from 20-20 hindsight vision. Law enforcement officials are involved in situations which are tense and dangerous and rapidly evolving. And so split-second decisions must be made. So going to the first enumeration of error which counsel pointed out, which is the, I don't want to call it pistol whipping because that's not what Mr. Wade called it. Mr. Wade said that Investigator Jones hit him in the mouth with a gun. I think as Judge Wilson properly pointed out, Mr. Wade still was a threat even after he was shot, even after he was handcuffed. And even according to Mr. Wade's own declaration and his objection to the magistrate's recommendation, he was handcuffed in front. And so he still maintained the mobility to move his hands and to remove Investigator Beach's hands from his head as she was trying to render aid. And so from the perspective of Investigator Jones and a reasonable officer at the scene and what he knew at the time, considering the grand factors, be it the severity of the crime, be it whether Jones was posing an immediate threat or was he actively resisting, I believe that the district court got it right in concluding that a reasonable officer would have concluded that they couldn't be. This is Judge Wilson now and there are several facts that, you know, we take a look at in making this determination. And here it's pretty clear from this record that, first of all, Wade was already in handcuffs when he was hit in the head with the pistol. So he was not resisting. He was not attempting to flee. And he was handcuffed. He was slumped over the center console of the car. He was unarmed. And he'd been severely injured by three gunshots, including one in the head. And so, I mean, we look at these facts in a light most favorable to Wade as we are required to do on a de novo review. Couldn't a reasonable jury come to the conclusion that when he was hit in the head with a gun that that was an excessive use of force? No, sir, I do not think so. In the Mobley versus Palm Beach City Sheriff's Department case, this court decided that force can be applied when a suspect has not given up and has not stopped resisting and may still pose a danger to the arresting officer. But isn't that, this is Judge Lego, I apologize, but isn't that really the crux of the question? Which is that there seems to be a dispute as to the evidence. And so the question is looking at the evidence in a light most favorable to Mr. Wade, the excessive force was used if he was not resisting. Now, Officer Jones says that he was resisting because he was not being compliant. So isn't that really a question of fact? And isn't that appropriate then for the fact finder or jury to make that determination? Thank you, Your Honor. I do not think that it is a question of fact. While there may be a dispute, I do not believe that it is a material dispute. Because even construing the facts in the light most favorable to the plaintiff, and I am using plaintiff's own words from his declaration, which is at document 44, and it is number six of the plaintiff's appendix, is that he was able to remove the hands, her hands from my cranium. And so I think a jury could infer that he was not that incapacitated to where he was completely still and completely compliant. Because he was still able to move. He was still able to have mobility. And apparently he had enough strength to remove Investigator Beach's hands from his head. And so I do not think that that would be a question for the jury. Because even taking defendant, excuse me, even taking Nicholas Wade's own words, that would lead a reasonable officer to believe that he is still a threat to the officers. Additionally, in the Garrett case, this court held that striking a resisting suspect on the top of the head with the butt of a gun combined with the use of pepper spray and feathering did not violate the Fourth Amendment. And I understand that plaintiff is relying on the Hadley case, Slitter, and Lee for the proposition that gratuitous force cannot be used against a party who is not resisting. But here, I think it is clear that there were some movements from Wade, which a reasonable officer could construe as him resisting. And so therefore, there was no law that would have put Investigator Jones on notice that what he was doing violated some type of clearly established law. And if I could move quickly to the shooting of Wade, which counsel says is the second most egregious error. As I said earlier, officers are confronted with very tense and dangerous situations. And in this particular instance, Investigator Daniels did find himself in a precarious position that necessitated him to make an immediate decision as to whether deadly force could be used. And looking at the reasonableness, what the court has said in Perez v. Zudinsky is we look at three things. Where was the weapon? What type of weapon was it? And what was happening with the weapon? And in this situation, where was the weapon? The weapon was underneath the chin of a suspected murder suspect of a suspected child degree, excuse me, a cruelty to children suspect. What type of weapon was it? It was a sawed-off shotgun. This is not something that you can just go into the store and buy. It is something that has to be manipulated. And what was happening with the weapon? And I know there was discussion in plaintiff's reportings as to whether or not Nicholas Wade actually pointed the gun at anybody. But according to Nicholas Wade, what he said, and this is document 54, paragraph 10, I heard footsteps advance towards the vehicle. I instinctively turned with the weapon beneath my chin to see who was approaching. And so from the vantage point of Investigator Daniels, any reasonable officer, knowing the caliber of person who is in possession of this gun, if he moves in any direction and he says with the weapon beneath my chin, a reasonable officer would perceive that to be an immediate threat to either Ms. Belk or to any officers that were outside of the car. And in Tennessee versus Garner, the court held that it is not unconstitutional to use deadly force when an officer has probable cause to believe that a suspect poses a threat. And Carr versus Titangelo even goes as far to say that a reasonable mistaken belief that probable cause exists for use of deadly force is not actionable. So even if it was a mistaken belief as to where Nicholas Wade was pointing the gun, it was definitely a reasonable one based on the fact that he, in fact, had moved. And so the courts have held, particularly in Jean-Baptiste versus Gutierrez case, which is a little factually similar here in that in Jean-Baptiste, the officer was chasing an armed robbery suspect. The officer saw the arrestee with a gun. The officer fired 14 times and hit the plaintiff eight times. He is now constrained to a wheelchair. And similar to this case, Jean-Baptiste said that he did not point the gun at the officer. But what the court said was because Jean-Baptiste was a suspect of a violent crime and he was that the officer. This is Judge Wilson. I might agree with you that the district court's summary judgment on Wade's excessive force claim against Solomon Daniels for shooting him was maybe on solid ground, but I'm more concerned. And I want you to tell us why the summary judgment on the deprivation of the medical care claim against these three officers for their delay in requesting an ambulance should be sustained on appeal. Four minutes after someone has been shot three times in the head before you call an ambulance to me seems like a long time. And a jury could make a determination that that's an unreasonable length of time to wait before you call an ambulance to secure someone who's been shot three times, including once in the head. But what's your response to that? Yes, sir. Of course, as I said earlier, all reasonable inferences can be drawn in favor of the plaintiff, but only to the extent that it is supported by the record. And so what the court relied on and plainly even referenced is the actual cat report. And as we all know, cat reports are essentially the chronology of events as they are unfolding. And it is document 50-7, number five, a plaintiff's appendix. And in looking at the cat report, there is no evidence that the shots were fired four minutes before the ambulance was is that the officers arrived on scene four minutes before the shots were fired. And the event is a 1050, which means that they are serving a criminal warrant. And so this is Judge Wilson again. So what does the record reflect then with regard to the length of time that expired after he was shot and the time that one of the officers called for an ambulance? The record is actually silent as to what time. Well, put it like this. The record is silent that the shots were fired at 2-0-3, if that helps you out. What the record reflects is that the shots were fired at 2-0-7, which is the exact same time that the EMS was actually requested. And because the officers are on scene, they're not calling 911. They're merely transferring this information over their radio. And so according to this cat report, at 14-0-7, it says request EMS to New Birth Church, subject signal 50, which means person shot. Again, at 14-0-7, 2-0-7, it says shots fired. And at 2-0-8, it says male shot in the head. And so there is no indication from the record that there was, in fact, a four-minute delay, which explains why the defendant failed to provide an explanation for any alleged intentional delay. Additionally, what plaintiff alleged even in his initial complaint and his response and summary judgment is that he was without medical care for 30 minutes. And that is absolutely disputed by the record in that the ambulance arrived nine minutes after the officer on scene radioed to say, hey, someone has been shot and we request an ambulance. And so therefore, because there is no evidence to show that there was no delay, then the officers could not have been deliberately indifferent to the medical needs because... This is Judge Wilson again. This record reflects that Officer Daniels stated after he'd been shot, quote, I shot that mother in the head and the mother will die any minute. Isn't that evidence that a jury could reasonably rely upon to conclude that there was a delay in seeking medical attention to see if he would die of his wounds? I would say that no, because Investigator Wilson was the one, was the investigator who was kind of the, I guess, the officer in charge on scene. And I cleaned that language up a little bit. Yes, sir. I definitely recognize that. And so, regardless of what Investigator Daniels said, it was Investigator Wilson who over and over again said, I asked another officer on scene to request an ambulance. And so, I mean, there's no evidence in the record that Investigator Wilson even heard what Investigator Daniels said. And so I do not think that a jury could infer that based on Investigator Daniels' alleged statement that there was some delay in providing medical treatment. On top of the fact that as soon as the shooting happened, and I can move quickly to Investigator Beach, I think it is undisputed in the record that Investigator Beach applied napkins to the gunshot wound. And a reasonable jury could infer that that was in fact medical treatment because as we have all seen on TV, as soon as someone is shot, the first thing somebody does is apply pressure to the wound. And so... This is Mrs. Donald. This is Jill Pryor. I do want to ask you about that because according to Mr. Wade, he told Officer Beach that she needed to move her hand so that he could breathe and that blood was filling his mouth. And I don't see in your brief where you ever deal with the claim that she used excessive force by continuing to apply that pressure after he said that. Okay. Sure. And I can address that now. As we all know, the use of force must be proportionate to essentially the need. And in this particular instance, the use of force was just merely to place resistance on his head to in fact stop the bleeding. But again, because of the movement that Wade was doing and the fact that he was able to move her hand, it must... I mean, one can infer that it must not have been that excessive of a force if he was in fact able to move her hand. Okay. Thank you. And because Nicholas Wade still had a range of motion and was still struggling against her, the force was not excessive. And if it was use of force, it was definitely de minimis because there was no period of permanent injury resulting from that. Thank you, Your Honors. I will ask that you affirm the decision of the District Court. Thank you, Ms. McDonald. And Mr. Smith, you have reserved some time for rebuttal. Yes, Your Honor. Thank you. I'd just like to clarify a few points that Ms. McDonald made relating to Mr. Wade's claim against investigators Daniels, Jones, and Wilson for the deprivation of medical care. Ms. McDonald claims that the record is simply devoid of evidence of exactly when the Mr. Wade pointed out on page 18 of a reply brief to this court that Investigator Wilson himself stated in his DeKalb County Police Department statement form just hours after the shooting occurred that approximately at 2.03, we noticed the subject, Nicholas Wade, had a shotgun in his car with him and he pointed the weapon and that is when Investigator Daniels fired his service weapon striking the subject in the head. So from defendant's own declaration, this court, drawing the facts in favor of Mr. Wade, can be sure that the shooting occurred at 2.03 and that the cab report, as Ms. McDonald points out, shows that at 2.07, an investigator finally communicated over the radio that shots were fired. And Judge Wilson, you pointed out to Ms. McDonald in your questioning, Investigator Daniels' statements during that four-minute delay and what the district court relied upon and what appellees have relied upon is purportedly distinguishing this court's clearly established law that a jury can infer deliberate indifference when an officer ignores without explanation is requiring that Mr. Wade put forth some evidence that the investigators were acting out of, say, self-interest or that there was some nefarious motive involved in the delay. But it's critical to note that it's the delay in and of itself that's actionable. It doesn't matter if the investigators delayed providing medical care out of the self-interest or if they did so because they were simply standing around and waiting for Mr. Wade to see if he would Mr. Smith, this is Jill Pryor. But in Valderrama, we said, we expressly said we weren't deciding whether a delay of a few minutes in and of itself could constitute deliberate indifference. So what is your authority that the delay in and of itself without any evidence that the officer's intentionally delayed would be sufficient for this claim? Well, in Valderrama, this court was relying on this court's holding and boozemen that a jury can infer that intentional element that deliberate indifference when an officer ignores without explanation. And so the time lapse, the four-minute delay in and of itself is not actionable, but it's the justification, the reasoning, the non-medical reason why the investigators delayed. And so if the investigators... Here we don't have the evidence of the reason for the delay, do we? That's correct. And so that's why at this stage, when the facts are taken the light most favorable to Mr. Wade, a jury could infer deliberate indifference, Judge Pryor. Thank you. I'd like to thank the members of the panel for their time today. And we ask that the court reverse the district court's grant of summary judgment and remand for a trial on Mr. Wade's claims. Thank you. All right. And Mr. Smith, the court would like to thank you. We note that you were appointed by the court to represent Mr. Smith for this appeal and the court thanks you for your